**BALDWIN SHIPPING CO., Inc., v. SOUTHERN PAC. CO.**[*]

(Circuit Court of Appeals, Ninth Circuit.  August 1, 1921.)

No. 3656.

Shipping ⬤⟞104—Railroad agreeing to reserve steamship space held not liable on failure of brokers through whom booked to make reservation.

Where a railroad company, which, in consideration of shipments to the coast over its line, was accustomed to ascertain from steamship companies whether they could book such shipments and at what clearance and rate, and, if accepted, to send confirmations to its representatives on the coast, who exchanged confirmations with the steamship company, agreed with an exporter, which had failed to get space, "to reserve space for the transportation of, and to transport or cause to be transported" from San Francisco to Japan, a cargo of pig iron at $15 per ton, and, finding it impossible to secure space directly, booked it through brokers at such rate, which was cheaper than the steamship companies were asking, is not liable for breach of contract on the failure of the brokers to reserve space, the agreement being one of agency, though the railroad failed to disclose to the exporter the steamship with which it had booked the freight; it never having been able to ascertain the identity

thereof from the brokers, the exporter having made no objection to booking the freight through brokers, who were not shown to be irresponsible, and there being no denial of an agent's duty to his principal.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank H. Rudkin, Judge.

Libel by the Baldwin Shipping Company, Inc., against the Southern Pacific Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The appellant presented three causes of libel in the court below, all of which were of similar nature, so that in this opinion it will be necessary to consider only the first. It was alleged that on or about June 22, 1917, the appellee agreed with the appellant to reserve steamer space for the transportation of, and to transport or cause to be transported from San Francisco, Cal., to Japan, 2,000 tons of pig iron and steel articles for late July, August, and September, 1917, clearance at the rate of $15 per ton; that the appellee did not reserve such steamer space; that the appellant duly tendered the appellee said pig iron and steel articles for transportation to Japan, and demanded steamer space for the transportation thereof, but the appellee failed and neglected and refused to accept said commodity for transportation, or to transport same, or to furnish or supply steamer space therefor, by reason whereof the appellant was obliged to and did procure other space and transportation for said commodity and was obliged to pay therefor $10,000 in excess of the agreed rate. The appellee in its answer denied the allegations of the libel, and by way of further answer alleged that at the time mentioned in the libel the appellee did not own, control, or operate any steamship between the port of San Francisco, or any Pacific Coast port, and any foreign port, nor did it own or operate any means of transportation between said ports; that the appellee has never published or filed with the Interstate Commerce Commission a through rate from any Pacific Coast port to any foreign port.

It was shown on the trial that on June 22, at San Francisco, the appellee wrote the appellant as follows: "Confirming phone conversation, we have booked for your account 2,000 tons of pig iron and steel articles, inexcessive sizes, Japan, late July, August, September, at $15 per ton, weight or measurement ship's option. This will be covered by Southern Pacific Contract 608. Kindly confirm in writing." The appellant answered: "This will acknowledge receipt of your letter of June 22, file 1–E, contract 608, booking for the account of the Baldwin Shipping Co. 2,000 tons pig iron and steel articles inexcessive sizes, Japan, late July, August, and September, clearance at ocean rate of $15 per ton, weight or measurement ship's option, covered by your contract 608. You have advised us that just at the present time you cannot divulge to us the name of steamer line with whom you have booked these 2,000 tons steel articles, but that you guarantee to protect $15 rate and clear on first-class steamers carrying lowest rate of insurance. As soon as you are able to advise us with whom you have booked this freight, please do so, in order that we may give instructions to our New York office relative to issuance of the bills of lading. * * * CC–Ny. In routing this business do not fail to see that the S. P. is the terminal delivery line."

The court below found that the appellee had never published or filed with the Interstate Commerce Commission any through or other rates from San Francisco to any foreign port, but that in the course of its business as a matter of accommodation, and to induce shippers to ship freight and merchandise over the Southern Pacific lines, the appellee had reserved space on steamers destined for foreign ports for freight and merchandise carried over its lines to San Francisco for foreign shipment, and held that, if the appellee was a mere agent to reserve steamer space, there was no claim of a failure or breach of duty in that regard, and if the undertaking was an absolute and unconditional one, the contract was against public

policy and void, citing **J. H.** Hamlen & Sons Co. v. Illinois Cent. R. Co. (D. C.) 212 Fed. 324.

E. B. McClanahan, S. Hasket Derby, H. W. Glensor, Ernest Clewe, and Carroll Single, all of San Francisco, Cal., for appellant.

Geo. K. Ford and Elliott Johnson, both of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). We think it clear that the agreement between the appellant and the appellee was one of agency. In the libel it was alleged that the appellee agreed with the appellant "to reserve space for the transportation of, and to transport or cause to be transported from San Francisco, California, to Japan, 2,000 tons of pig iron" at $15 per ton, etc., and the breach of the agreement was alleged to be the fact that the appellee—

"did not reserve steamer space for said commodity, or any part thereof. * * * But appellee failed, neglected, and refused to accept said commodity or any part thereof, for transportation, or to transport said commodity, or to cause to be transported, or to furnish or supply steamer space for the transportation thereof."

The nature of the agreement is further indicated by the letter of the appellee to the appellant of June 22:

"We have booked for your account 2,000 tons of pig iron and steel articles," etc.

It was shown by the evidence that the appellee had solicitors in various cities in the eastern part of the United States, who made the round of firms who were known to be shipping to the west coast either domestic or foreign business, for the purpose of soliciting the routing of the business over the appellee's line, and that with respect to export business those solicitors would wire to the general freight office at San Francisco to obtain ocean space, and the ocean rate for a given quantity of tonnage that might be offered to them, whereupon the appellee would make inquiries of various steamship companies and ascertain whether they could book the shipments, and, if so, for what clearance and at what rate. That information would be wired back to the appellee's commercial agent in the east, and if the space and rate was accepted a confirmation would be sent to the appellee at San Francisco, and the appellee would exchange a confirmation with the steamship company accordingly.

It was shown, also, that in the spring and summer of 1917 space was very difficult to secure on vessels for exportation to China and Japan; that it was the policy of the appellee to book such space directly with the steamers, if possible, but that conditions at that time were such that it was often impossible to secure space for large tonnage, and it was necessary to book it through brokers; that C. R. Haley & Co., of San Francisco, were in the freight brokerage business, and were booking rates for shipments from San Francisco to China and Japan; and that the freight in question was booked through that firm, for the reason that their rate was the cheapest, they agreeing to furnish transpor-

tation at $15 per ton, while the steamship companies were asking $20 per ton. The evidence indicates, also, that the appellant had made effort on its own behalf to get space and had failed, and for that reason it had applied to the appellee.

All the facts point to the conclusion that the appellee was an agent for the appellant in endeavoring to facilitate the transshipment of goods from San Francisco, and that in good faith it carried out the agreement which is charged in the libel, an agreement to reserve steamer space for transportation of goods from San Francisco to Japan, and that in good faith it made an agreement with a broker at a rate lower than that demanded by the steamship companies. From the allegations of the libel it is evident that the damages which are sought to be recovered here are the difference between the rate of $15 per ton, and the rate which the steamship companies were at that time demanding.

But the appellant urges that the agreement was not one of agency, for the reason that the appellee refused to disclose to the appellant the steamship or steamship line with which it had booked the freight. The evidence, however, clearly shows that the appellee never refused to disclose any information which it possessed. Not being able to engage space directly with any steamship or steamship company, it did as it had done before, engaged space through a firm of brokers. The appellant suggests that the brokers were irresponsible, but there is nothing in the evidence to support the suggestion, other than the mere fact that the brokers failed to perform their contract. The appellee was never able to ascertain through C. R. Haley & Co. the name of any steamship or steamship line on which the goods were intended to be shipped. For that reason it was unable to give further information to the appellant. The appellant was furnished with a copy of the letter of the appellee to C. R. Haley & Co., of date June 28, 1917, in which it said:

"Please book for the Southern Pacific 2,500 tons pig iron and steel articles for August and December, clearance to Kobe and Yokohama, at $15."

The appellant made no objection to the appellee's action in so booking the freight, and we think the appellant was clearly chargeable with notice that the same course was pursued by the appellee in booking the shipments which are the subject of the second and third causes of libel. We are unable to see that at any time in the conduct of the appellee there was denial of an agent's duty to a principal. Taking this view of the nature of the agreement, we find it unnecessary to consider the other ground on which the court below denied liability.

The judgment is affirmed.